United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 10, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 06-30443

SANDRA GREENWELL,

Plaintiff-Appellant,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Sandra Greenwell filed suit against State Farm Mutual Automobile Insurance Co. ("State Farm") pursuant to the Family Medical Leave Act ("FMLA"). This appeal involves whether Greenwell provided sufficient FMLA-notice to guard against her termination based on excessive absences. The district court granted summary judgment to State Farm, and Greenwell timely appealed. We affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Greenwell worked at the State Farm offices in Monroe, Louisiana, from 1984 to April 1, 2003. In June 2001, Darren Gomez served as Greenwell's supervisor. Gomez eventually left the company, and Sherry Griffin became one of two supervisors over Greenwell's position as a Central Operations Assistant. On June 12, 2002, via a Formal Written Warning to Greenwell, Gomez documented work performance issues relating to lack of availability, dependability, flexibility, teamwork, and support of management decisions. Between this date and August 19, 2002, Greenwell received several written evaluations regarding her excessive unprotected absences and intermittent progress towards improving areas of concern. On September 19, 2002, Greenwell received a reminder to give at least twenty-four hours of prior notice for scheduled time away from the job. Greenwell's pattern of absenteeism continued, and in response, on October 21, 2002, State Farm suspended her "permission absences" except paid sick leave, paid vacation, and paid personal time. The following year, on January 9, 2003, State Farm once again wrote to Greenwell regarding excessive unprotected absences and its decision to continue the suspension of her permission absences. The next month, on February 28, 2003, State Farm sent a follow-up memo counseling Greenwell on unprotected absences and requesting immediate improvement.

The most pertinent facts underlying this lawsuit occurred on March 31, 2003, when Greenwell unexpectedly missed work without giving State Farm twenty-four hours of prior notice. Greenwell contends that on this date, she called Griffin to let her know that she needed to stay at home with her son due to an accident. Based on Greenwell's account, her son injured himself on March 30, 2003, while sliding down a tin barrel into the levee located near the family's home. This accident temporarily aggravated his chronic asthma condition. In the conversation, Griffin allegedly mentioned

2

FMLA but did not request Greenwell to provide documentation of entitlement under the statute. Greenwell returned to work on the next day and decided to not request FMLA protection for her absence. On either April 1 or April 3, 2003, State Farm terminated Greenwell's employment with the company.

On November 30, 2004, Greenwell filed suit against State Farm claiming violations of FMLA and Title VII. On December 9, 2005, State Farm moved for summary judgment. The district court dismissed with prejudice Greenwell's Title VII claim. On Greenwell's FMLA claim, the district court found that a factual dispute existed as to whether Greenwell's son was suffering from a serious medical condition on March 31, 2003; however, Greenwell failed to provide State Farm with sufficient FMLA-notice. Greenwell timely appealed the district court's judgment. We address whether Greenwell provided sufficient FMLA-notice to State Farm regarding her March 31 absence.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's grant of summary judgment, applying the same legal standards as the district court. *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 262-63 (5th Cir. 2005). The court must determine whether the submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Greenwell argues that she provided State Farm sufficient FMLA-notice on March 31 and April 1, 2003, of her intentions to seek protected leave. Although Greenwell refused to fill out a FMLA form because she had no doctor's excuse, Greenwell argues that the form is not required under FMLA except when an employer needs additional medical information for entitlement to

3

benefits. According to Greenwell, her two prior FMLA leaves, approved by State Farm, to care for her son's asthma condition provided the information necessary to support the disputed absence.

In the case of foreseeable absences, FMLA requires employees to provide an employer with at least thirty days of advance notice. 29 C.F.R. § 825.302. For unforeseeable absences, employees should provide an employer with notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998). Employees need not "expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Satterfield*, 135 F.3d at 977 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

Whereas the employer determines whether an employee's leave qualifies for FMLA protection, the employee "must explain the reasons for the needed leave." *Willis v. Coca Cola Enter.*, 445 F.3d 413, 419 (5th Cir. 2006) (quoting 29 C.F.R. § 825.208(a)(1)). In Greenwell's most recent reiteration of the relevant facts, an affidavit dated January 16, 2006, she makes no mention of informing Griffin about a FMLA-qualifying medical condition or the need for FMLA-leave. She states that, "[o]n March 31, 2003, Affiant called in to State Farm to tell State Farm she would be absent. Affiant talked personally to Sherry Griffin, told her what happened to her son, Rayne, and that he was scared, hurt badly and that she needed leave. Sherry Griffin said it would be okay." In her deposition testimony, she intimates that her son's asthma was the partial cause of her March 31 absence, but she never mentions a FMLA-qualifying asthmatic flare-up related to his chronic

4

condition or a request for FMLA leave. Instead, Greenwell states that Griffin advised her to seek FMLA protection after her return on April 1, 2003, but Greenwell chose not to fill out the forms. Greenwell's deposition testimony of November 28, 2005, reads in pertinent part that

> I told her that, you know, he was pretty messed up and his asthma and all was acting up and I just wanted to keep a close eye on him. And that was basically it. And she was like, well, okay, you know, you need to stay home. Well, then I come back the [next] day and it's, "Well, I need you to secure this under FMLA if you can.["] And I couldn't because I didn't have documentation. I didn't take him to no doctor.

The following day, on April 1, 2003, Greenwell wrote an email to the human resources representative regarding the absence but still provided no indication of her intentions to seek a FMLA protected leave for her absence. The April 1 email states that

> Sunday [Rayne] and a bunch of boys were playing near a deep canal by our levy . . . . He was so skinned up, another boy jumped in to save him out of the muddy nasty water . . . . I was out yesterday with Rayne. Nancy I can plan to work hard on attendance and unpredictable things like this mess me up.

This communication does not sufficiently connect Greenwell's absence on March 31, 2003, to a medical condition rising to the level of seriousness protected under FMLA thereby constituting sufficient FMLA-notice. An employee merely alleging sickness as the reason for her absence does not automatically provide sufficient FMLA-notice. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999) (holding that the employee's reference to his mental condition did not constitute the requisite notice of an intent to invoke FMLA leave); *Satterfield*, 179 F.3d at 980 (holding that the "meager" information provided to the employer concerning the employee's alleged illness was insufficient FMLA-notice). In this case, even assuming that her son suffered a severe asthma attack and required FMLA-qualifying medical attention on the next day, Greenwell failed to provide State Farm with sufficient notice.

5

Greenwell's decision to not fill out the FMLA form also deprived State Farm of the opportunity to "determine that the leave qualifies under [FMLA]." 29 C.F.R. § 825.208(a)(1). As aptly noted by this court, the "sharing of the informational burden will not work if employees, for the purposes of litigation, can later designate leave as FMLA-qualifying without making a proper showing that, at the time they requested leave, they put their employer on notice that FMLA leave was necessary due to a serious medical condition." *Willis*, 445 F.3d at 419. To place the burden on an employer to make such determinations whenever an employee falls ill has been held "inconsistent with the purposes of the FMLA, because it is not necessary for the protection of employees who suffer from 'serious health conditions.'" *Satterfield*, 135 F.3d at 981.

FMLA only requires a limited inquiry, and employer[s] are "not required to be clairvoyant." *Satterfield*, 135 F.3d at 980 (quoting *Johnson v. Primerica*, 1996 WL 34148, at *5 (S.D.N.Y. 1996)). Greenwell's supervisor, Griffin, invited Greenwell to clear the absence under FMLA, which discharged State Farm's duty to inquire based on the facts provided by an employee. Greenwell chose not to seek FMLA protection despite her knowledge of State Farm's FMLA procedures as discussed below. The fact that Griffin stated during a telephone conversation that Greenwell's absence would be okay does not eliminate the need for Greenwell to follow State Farm's FMLA procedures. *See Bocalbos v. Nat'l W. Life Ins.*, 162 F.3d 379, 384 (5th Cir. 1999) ("Bocalbos also contends that the defendant granted the leave and therefore should not be permitted to now insist that the FMLA was not applicable. His argument is not persuasive . . . [because the employer] was not aware at the time of his request that he had adopted the children in 1992, [which fell outside of the 12-month limitation on eligibility]."). Greenwell's refusal to provide documentation from a doctor confirming her son's

6

asthma or the scrapes and bruises as a serious medical condition further supports State Farm's arguments that she failed to give sufficient FMLA-notice.

At her deposition, Greenwell demonstrated her knowledge of the procedures necessary to secure FMLA leave at State Farm and admitted to not following the requisite steps, i.e. obtaining documentation from the doctor. In *Satterfield*, the court reasoned that the plaintiff's "employment history and her knowledge, as well as utilization, of the Wal-Mart's rules and procedures concerning leave and absenteeism provide[d] a backdrop for determining whether she gave sufficient FMLA-notice." *Satterfield*, 135 F.3d at 978. Greenwell states in her deposition that

> [I]n order to secure your job at State Farm and prove that you have a medical problem, you're still going to pay that extra fee needed to say to secure your job–because there's a lot of time I always had the medicines at home. . . . I just had to go secure that physician and to prove that . . . what['s] [the] problem. But this time, I didn't even make the attempt to go see Dr. [Lawrence] Danna, because after you're told that your attendance is good and you don't have to worry about all that, then you're just thinking—you're not even thinking about protecting yourself.

The undisputed evidence of Greenwell successfully taking FMLA leave without consequence three times prior to her termination further corroborates the district court's finding that Greenwell possessed knowledge of State Farm's protocol for requesting FMLA leave. In 1999, Greenwell requested and received permission for FMLA leave for her own serious health condition. In 2001 and 2002, Greenwell requested and received permission for FMLA leave to provide health care for her asthmatic son.

Greenwell offers no persuasive reasons for straying from State Farm's FMLA procedures and neglecting to secure medical documentation. Although State Farm's records may reflect that her son suffers from a serious medical condition, Greenwell concedes in her deposition that on March 30,

2003, her son's asthma attack was not severe. Dr. Dana, the family physician, has no record of a medical visit or any recollection of seeing Greenwell's son on this date. Without sufficient notice specific to her son's condition on March 31, 2003, State Farm lacked the information to determine whether Greenwell's absence qualified for FMLA protection. Accordingly, Greenwell failed to provide State Farm with sufficient notice of her intention to seek FMLA-qualifying leave during her communications on March 31 and April 1, 2003.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment.